UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JASON T. KENDALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:17-cv-00155-RLY-TAB |
| ) | |
| NANCY A. BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jason T. Kendall appeals the Commissioner's denial of his application for disability insurance benefits. The Magistrate Judge finds that the Commissioner's decision should be remanded for further proceedings because, among other things, the Administrative Law Judge erred in analyzing whether Kendall meets or equals Listing 12.15, and failed to account for Kendall's moderate difficulties in concentrating, persisting and maintaining pace.

**I.  Background**

Kendall applied for Social Security benefits, alleging disability beginning on October 1, 2010. His claims were denied initially and upon reconsideration. He testified at a hearing before an ALJ on January 24, 2017. The ALJ issued his decision on February 23, 2017, finding Kendall not disabled.

The ALJ determined that Kendall last met the insured status requirements of the Social Security Act on December 31, 2016. [Filing No. 9-2 at ECF p. 24]. At step one, the ALJ found Kendall did not engage in substantial gainful activity between the October 1, 2010 alleged onset date and his date last insured of December 31, 2016. [*Id.*] At step two, the ALJ determined Kendall has severe impairments of degenerative joint disease of the hips and knees, postraumatic

stress disorder, and cognitive disorder not otherwise specified. [Filing No. 9-2 at ECF p. 24]. At step three, the ALJ concluded that none of Kendall's impairments met or medically equaled the severity of a listed impairment. [*Id.*]

The ALJ found that through the date last insured, Kendall had the residual functional capacity to perform a limited range of sedentary work. [Filing No. 9-2 at ECF p. 26]. Because of his mental impairments, the ALJ limited Kendall "to simple and non-detailed/non-complex work with little change in the work routine day to day"; "occasional superficial interaction with coworkers and supervisors," and no interaction with the general public. [*Id.*] At step four, the ALJ decided Kendall was unable to perform any of his past relevant work. [Filing No. 9-2 at ECF p. 30] At step five, given his age, education, work experience, and RFC, and based on the vocational expert's testimony, the ALJ found Kendall was able to perform work that exists in significant numbers in the national economy and therefore concluded he was not disabled. [*Id.* at ECF pp. 31–32.]

Kendall sought review in the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## II. Discussion

The Court reviews the ALJ's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). This review is deferential; the Court does not reweigh the evidence or substitute its own judgment for that of the ALJ. *Id.*

Kendall's first challenge is to the ALJ's analysis of whether Kendall meets or equals Listing 12.15 for trauma- and stressor-related disorders. To meet the Listing, a person must satisfy (1) the paragraph A criteria and the paragraph B criteria, or (2) the paragraph A criteria and the paragraph C criteria. The Commissioner does not dispute Kendall meets or equals

criteria A, so he has to show he meets criteria B or C. Kendall argues he satisfies the B criteria because he has a marked difficulty understanding, remembering, and applying information. He also argues he satisfies the C criteria.

The ALJ erred because his analysis of the paragraph C criteria is perfunctory and does not allow for meaningful judicial review. *See Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003) (reversing because ALJ's Listing analysis was "devoid of any analysis that would enable meaningful judicial review."). The C criteria are used to evaluate "serious and persistent" mental disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00G, 12.15C (2017). To satisfy the paragraph C criteria, a mental disorder must be "serious and persistent," which means there is:

> [A] medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder (see 12.00G2b); *and*
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15C (2017).

The ALJ's analysis regarding the C criteria consists of only this: "The undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." [Filing No. 9-2 at ECF p. 26]. The ALJ does not identify the paragraph C criteria or explain what evidence shows Kendall falls short of the criteria.

Furthermore, no medical expert offered an opinion on whether Kendall meets or equals Listing 12.15. An ALJ must receive an expert opinion on the issue of medical equivalence, and opinions of state agency medical consultants may constitute substantial evidence on this issue. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Although the ALJ gave "partial

weight" to the opinions of the state agency psychological consultants who considered several listings for mental disorders and found Kendall did not satisfy them, they did not consider Listing 12.15.  The consultants' opinions were given in 2016, which was before new Listing 12.15 used for trauma- and stressor-related disorders was created and took effect (January 17, 2017).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00B11, 12.15 (text of section 12.00 effective Jan. 17, 2017); 81 Fed. Reg. 66138, 2016 WL 5507752, at *1 (Sept. 26, 2016).  Thus, not surprisingly, the state agency consultants do not offer any opinion as to Listing 12.15.

Kendall has the burden to present evidence supporting the conclusion that his impairments meet or equal a listed impairment, *see Ribaudo v. Barnhart*, 458 F.3d 580, 583–84 (7th Cir. 2006), and he has identified evidence that could support a finding that he meets or equals the paragraph C criteria.  Kendall has had PTSD and other mental disorders since at least 2009.  [*See* Filing No. 9-11 at ECF p. 701].  He has treated his disorders with medications and other treatment, including in-patient hospital admissions.  [See, e.g., *id.*]  Thus, Kendall clearly satisfies the "medical treatment" requirement of paragraph C, and he points to evidence that would support the "marginal adjustment" requirement too.  As his opening brief states, he has a pattern of spiraling downward, then he has a mental breakdown, and then he improves with treatment.  He has been hospitalized in 2009, 2011, and 2016 for mental health problems.  Indeed, the evidence suggests that Kendall's mental disorder involves exacerbations and remissions with recurrence or worsening of symptoms and signs that can interfere with his ability to work.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00E4.

As noted, Kendall submits he satisfies the B criteria of Listing 12.15 as well.  The ALJ found Kendall has moderate limitations in the three B criteria of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself.  [Filing No. 9-2 at ECF p. 25].  To the

extent the state agency psychologists assessed the B criteria of the mental health listings under their consideration—Listings 12.02, 12.04, 12.06, and 12.09—their opinions could provide evidence for a conclusion that Kendall did not satisfy those criteria.  However, Listing 12.15 contains revised, new B criteria that are somewhat different from the old B criteria in the listings the consultants considered.  *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.15B (2017), *with* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02B, 12.04B, 12.06B (2016).  And Kendall identifies evidence in the record that could support a finding that he has marked limitations in two of the mental functioning areas, namely, interacting with others and adapting or managing oneself.  The ALJ should give further consideration to the evidence pertaining to these areas, for example, the repeated domestic violence charges, an altercation with a coworker, and threats to kill others in his army unit, including his commanding officer.  [*See* Filing No. 9-2 at ECF p. 41, Filing No. 9-11 at ECF pp. 676, 678, 730].  As a result of these shortcomings, the ALJ's listing analysis is erroneous and requires a remand for further consideration of Listing 12.15.

     Kendall's second challenge is to the ALJ's evaluation of the VA's 100% disability determination, which was based on his anxiety disorder with depressed mood (claimed as PTSD).  [Filing No. 9-5 at ECF pp. 11–14].  The Seventh Circuit has said that an ALJ "should give" a VA disability determination "some weight."  *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006).  In *Hall v. Colvin,* 778 F.3d 688 (7th Cir. 2015), an ALJ gave "some" weight to a VA 70% disability decision because of the different criteria the two agencies use for determining disability.  *Id.* at 691.  The Seventh Circuit, however, said that "the differences [in the criteria] are small" and that the VA had found the claimant "totally unemployable by reason of his disability," which equated to a finding of total disability under the Social Security regulations.  *Id.*  The court explained that if "your medical condition precludes substantial gainful employment, you're totally disabled …

[under the Social Security Act]." *Id.* The court held that the ALJ failed to properly weigh the VA disability determination and ordered a remand to the Social Security Administration. *Id.*

Here, the ALJ similarly analyzed the VA's disability determination, noting that the VA uses different standards than the Social Security Administration. [Filing No. 9-2 at ECF p. 30]. He also reasoned that the VA's decision appeared to be based on findings over the course of Kendall's treatment, but did not depend on the frequency or severity of the findings, or account for his response to treatment. The ALJ then cherry picks from the bases for the VA's decision to emphasize those that detract from the disability rating while ignoring others that support it. [Filing No. 9-2 at ECF p. 30 (emphasizing "mild memory loss" and infrequent "suicidal ideations" and omitting mention of "[g]ross impairment in thought processes," "[g]rossly inappropriate behavior," "[d]ifficulty in adapting to work," and "[i]mpaired impulse control," among others [see Filing No. 9-5 at ECF p. 12]]. In light of this, further evaluation of the VA disability determination is appropriate.

Kendall also contends the ALJ erred by finding that Kendall had only moderate limitations in social functioning and applying such a limitation to his RFC. In discussing Kendall's mental impairments, the ALJ speculated that Kendall's symptoms would subside because he had been abstaining from alcohol. [Filing No. 9-2 at ECF p. 28]. The Seventh Circuit cautions ALJs not to "play doctor" by substituting their opinions for medical judgments. *See, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016). Although it is possible that abstaining from alcohol could cause Kendall's symptoms to subside, the ALJ was guessing that this would be the case. It is equally possible that drinking alcohol was one means by which Kendall self-treated his mental health symptoms.

Moreover, Kendall argues the ALJ did not properly account for his moderate limitations in concentration, persistence, or pace. The Commissioner responds the ALJ accounted for

6

Kendall's limitations by restricting him to simple and non-detailed/non-complex work with little change in the daily routine.  "[B]oth the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

Kendall's position finds support in Seventh Circuit case law.  *See Moreno v. Berryhill*, No. 17-1954, 2018 WL 914954, at *5–6 (7th Cir. Feb. 16, 2018) (holding hypothetical limiting the individual to "understand, remember, and carry out simple work instructions," "exercise simple work place judgments," "routine work," and "no more than occasional changes in the work setting" did not account for the claimant's moderate difficulties in concentration, persistence or pace); *Varga*, 794 F.3d at 813–15 (holding hypothetical limiting individual to "simple routine, and repetitive tasks … free of fast paced production requirements, involving only simple, work-related decisions with few if any work place [sic] changes" did not fully account for moderate difficulties in concentration, persistence and pace).  The ALJ found Kendall had moderate limitations in concentrating, persisting, or maintaining pace.  [Filing No. 9-2 at ECF p. 25].  In the RFC finding, the ALJ attempted to account for this limitation by restricting Kendall to "simple and non-detailed/non-complex work with little change in the work routine day to day."  [*Id.* at ECF p. 36].  The Seventh Circuit has rejected the view that "'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'"  *Moreno*, 2018 WL 914954, at *6 (quoting *Yurt*, 758 F.3d at 858–59).  Thus, the ALJ failed to sufficiently account for Kendall's moderate difficulties in concentrating, persisting, or maintaining pace in his RFC assessment and, consequently, in the hypothetical posed to the

7

vocational expert as well. [See Filing No. 9-2 at ECF p. 76]. A remand for further proceedings is required.

Finally, Kendall argues the ALJ erred in evaluating Kendall's subjective symptoms. The ALJ gave some good reasons for discounting Kendall's subjective statements about his symptoms. But the ALJ also gave reasons that, given the nature of Kendall's mental impairments, do not necessarily detract from his subjective statements, namely, his attempts to work and attend school. Because a remand is required on other issues, the ALJ may want to reevaluate Kendall's subjective complaints.

### III. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Plaintiff's Motion for Summary Judgment [Filing No. 17] be granted and that this case should be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 3/16/2018

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Electronic Distribution to All Counsel of Record